UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GAGANDEEP S.,

                    Petitioner,

          v.

WARDEN OF THE CALIFORNIA CITY
DETENTION CENTER,

                    Respondent.

No. 2:26-cv-00624-TLN-SCR

A # 246-750-832

**ORDER**

This matter is before the Court on Petitioner Gagandeep S.'s[1] ("Petitioner") *pro se*[2] Motion for Temporary Restraining Order ("TRO"). (ECF No. 7.) Respondent filed an opposition and motion to dismiss. (ECF No. 11.) Petitioner filed a reply. (ECF No. 13.) For the reasons set forth below, Petitioner's motion for TRO is GRANTED and Respondent's motion to dismiss is DENIED. Respondent is ORDERED TO SHOW CAUSE why this Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.

---

[1]     As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]     Since Petitioner's initial filing of his motion for TRO, the Court appointed counsel who is now enrolled in this case and filed a brief on Petitioner's behalf. (ECF Nos. 8, 10, 13.)

1

## I.    FACTUAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.) As Petitioner was proceeding *pro se* at the time he filed his Petition, the background facts are sparse.  Respondent has produced Petitioner's A-File and Form I-213, from which the Court can glean a few additional facts.  Petitioner entered the United States on June 5, 2023, without being inspected by an immigration officer at a designated port of entry.  (ECF No. 15-1 at 2.)  The same day, a Border Patrol Agent encountered Petitioner near Lukeville, Arizona, he was apprehended with a group of 52 individuals, and he was placed in removal proceedings with the issuance of a Notice to Appear ("NTA").  (*Id.* at 2–3.)  Petitioner was then released.  (*Id.*)  On July 7, 2025, Petitioner received instructions to report in-person to the Stockton ICE office.  (*Id.* at 3.)

On October 30, 2025, an immigration court in Concord, California found Petitioner is hereby removed from the United States.  (*Id.*)  On December 19, 2025, Petitioner filed an appeal with the Board of Immigration Appeals.  (*Id.*)

On January 7, 2026,[3] Petitioner reported to a U.S. Immigration and Customs Enforcement ("ICE") office and was taken into custody for violations of parole and conditions of release due to recent arrests.[4]  (*Id.*)

On February 27, 2026, Petitioner filed a petition for writ of habeas corpus, challenging his detention as violating his due process rights and seeking immediate release.  (*See* ECF No. 1.) On March 4, 2026, Petitioner filed the instant motion for temporary restraining order ("TRO"). (ECF No. 7.)  On March 5, 2026, this Court directed Respondent to file a response to Petitioner's motion.  (ECF No. 8.)  On March 10, 2026, Respondent filed a response.  (ECF No. 11.)  On

---

[3]    The Form I-213 states January 7, 2025, but based on the timeline of events and Petitioner's recent arrests, the Court understands this to be an error and the correct date to be January 7, 2026.  Respondent is instructed to inform the Court if the Court's understanding of this date is incorrect.

[4]    It appears from the Form I-213 that Petitioner was previously arrested: (1) on January 5, 2025, for possession of a controlled substance, driving without a license, and disorderly conduct; (2) on June 24, 2025, for violation of his probation, possession of unlawful paraphernalia, use or under the influence of a controlled substance, and possession of a controlled substance; and (3) on December 11, 2025, for driving under the influence, possession of unlawful paraphernalia, and possession of a controlled substance.  (*Id.*)

March 11, 2026, Petitioner filed a reply.  (ECF No. 13.)

## II.    STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

## III.    ANALYSIS

The Court considers each of the *Winter* elements in turn.

### A.    Likelihood of Success on the Merits

Petitioner argues that his detention without a bond hearing violates his due process rights.[5] (ECF No. 7 at 3.)  The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation

---

[5]    Petitioner also claims his detention violates the Immigration and Nationality Act ("INA"). (ECF No. 7 at 2.)  However, because the Court finds Petitioner is likely to succeed on the merits of his due process claim, it need not evaluate his INA claim at this juncture.

proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### i.    Liberty Interest

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released from custody. (*See* ECF No. 15-1 at 2–3.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Petitioner's liberty interest has been strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen released from custody pending immigration proceedings has a protected liberty interest in remaining out of custody."). Thus, Petitioner has a clear interest in his continued freedom.

///

4

Respondent's argument that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1) ("§ 1225(b)(1)") does not change this Court's analysis.[6]  (ECF No. 11 at 1–2.)  Section 1225(b)(1) provides for expedited removal and mandatory detention of a category of noncitizens seeking asylum through the specific process outlined in the statute.  The individuals covered by this section are defined as follows:

> [A noncitizen] described in this clause is [a noncitizen] who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the [noncitizen] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II).  The statute explains that when individuals who fall within this description are subject to mandatory detention: "If the officer determines at the time of the [asylum] interview that [a noncitizen] has a credible fear of persecution . . . the [noncitizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii); *see Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *3 (N.D. Cal. Sept. 3, 2025) (describing the § 1225(b)(1) process).

Here, there is no evidence in the record to suggest Petitioner is a member of the group subject to § 1225(b)(1) or that he sought or is seeking asylum through the § 1225(b)(1) process.  Respondent submits no argument or evidence that an immigration officer made the requisite determinations for § 1225(b)(1) to apply to Petitioner, nor does Respondent submit any argument or evidence that Petitioner went through or is currently in § 1225(b)(1) asylum proceedings.  Respondent's argument that Petitioner is subject to mandatory detention pursuant to § 1225(b)(1) fails and does not alter the Court's finding that Petitioner has a protected liberty interest.

///

///

---

[6]  Respondents also request the Court hold its ruling on the merits in abeyance pending the Ninth Circuit's decisions regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) and *Benavides Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG (E.D. Cal).  (ECF No. 11 at 2.)  The Court denies this request.  As discussed below, the Court finds Petitioner is likely to succeed on the merits of his claim and the Court will not delay injunctive relief on the prospective chance a pending appeal could change this outcome.

5

*ii.*        *Procedures Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution.  The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

First, Petitioner has a substantial private interest in remaining free from detention.  As previously stated, Petitioner was released from immigration custody more than two years ago. (*See* ECF No. 15-1 at 2–3.)  Despite this, Petitioner has now been detained for more than two months without prior notice or an opportunity to respond to the reasons for revocation of his release.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable, as Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  The cost and time of procedural safeguards are minimal here.  Notice and custody determination hearings are routine processes for

Respondents.  Any delay in detention (if justified) for the time to provide notice and a hearing is minimal.  Further, Respondent does not argue Petitioner is a danger to the community or a flight risk.  (*See* ECF No. 11.)  Therefore, the Court finds this last factor also weighs in Petitioner's favor.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice and a hearing to determine whether re-detention was warranted.  Respondent did not provide either.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  (ECF No. 1 at 15–23.)  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").  In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The government "cannot

reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy").

## IV.   CONCLUSION

IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order is GRANTED (ECF No. 7);

2. Respondent must IMMEDIATELY RELEASE Petitioner Gagandeep S. (A # 246-750-832) from custody under the same conditions he was released prior to his current detention. Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3. Respondent is ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondent demonstrates by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondent is ORDERED TO SHOW CAUSE why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner. Petitioner's newly

8

appointed counsel may supplement or amend Petitioner's habeas petition **within seven days** of the date of this Order. Respondent shall file responsive papers **within ten days** of the date of this Order. Petitioner may file a reply **within thirteen days** of the date of this Order. The parties shall indicate in their briefing whether they request a hearing;

5. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary; and

6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date March 30, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE